### GEORGE FANNIE v. STATE.

[58 South. 2.]

1. HOMICIDE. *Evidence. Dying declaration. Trial. Argument of counsel.*

In order that a dying declaration may be admissible in evidence, it must appear beyond a reasonable doubt, to have been made under the realization and solemn sense of impending death. The deceased at the time of making the declaration, must have had no hope, however slight, of recovery.

2. CRIMINAL LAW. *Improper argument of counsel.*

It is reversible error for the prosecuting attorney in the argument of a criminal case to call the attention of the jury to the fact that the wife of defendant had not testified and that the state could not introduce her as a witness.

APPEAL from the circuit court of Hinds county.
HON. W. A. HENRY, Judge.
Geo. Fannie was convicted of murder and appeals. The facts are fully stated in the opinion of the court.

*Howie & Howie,* for appellant, filed an extended brief too long for publication in full contending.

First. That the dying declaration admitted in evidence was not made under a sense of impending death, citing: Underhill on Criminal Evidence, p. 191; 2 Wig-

more on Evidence, p. 1805; *Bell* v. *State,* 17 So. 232; *Askley* v. *State,* 37 So. 960; *Slarks* v. *State,* 6 So. 843; *Matteley* v. *Commonwealth,* 19 S. W. 977.

Second. That it was error for the court to allow the district attorney to comment on the fact that the accused did not put his wife on the witness stand and overruled the objection of defendant to said comment, citing; 6 Ency. Evidence, p. 895; *Knowles* v. *People,* 15 Mich. 413; *State* v. *Watcher,* 29 Ore. 309; *Greaves* v. *United States,* 150 U. S. 118; *Byrd* v. *State,* 57 Miss. 243; Greenleaf on Evidence, par. 334; 4 Wigmore on Evidence, p. 3065; *Johnson* v. *State,* 63 Miss. 313.

*Frank Johnson,* assistant attorney-general, for appellee, filed an elaborate brief too long for publication and citing the following authorities: *Lester* v. *State,* 20 So. 232; *Brown's case,* 32 Miss. 433; *McDaniel's case,* 8 S. & M., 401; *McQueen* v. *State,* 103 Ala. 12; *Regina* v. *Howell,* 15 Dennison (Crown Cases), p. 1; *State* v. *Tillman,* 11 Iredel, 513; *State* v. *Evans,* 124 Mo. 397; *Lambeth's case,* 13 Smedes & Marshall, 322. *Johnson* v. *State,* 63 Miss. 313; 6 Ency. Evidence, p. 893; *Cole case,* 21 So. 706; *People* v. *McWhorter,* 4 N. Y. 438; *Gavini* v. *Scott,* 51 Mich. 373; *Commonwealth* v. *Webster,* 5 Cush. (Mass.) 295; *McDonough* v. *Neal,* 113 Mass. 91; *Robertson* v. *State,* 44 Tex. Cr. App. 211; *Mercer* v. *State,* 17 Tex. App. 452; *People* v. *Hovey,* 92 N. Y. 555; *Harris* v. *State,* 47 So. 643; *Hall* v. *State,* 22 So. 141; *Blatch* v. *Archer,* Cowpens Reporter, 63.

Argued orally by *Virgil R. Howie,* for appellant.

Argued orally by *Frank Johnston,* assistant attorney-general, for appellee.

SMITH, J., delivered the opinion of the court.

Appellant seems to have been practically separated from his wife, who was living temporarily with her

aunt. On the night that he killed the deceased, he went to this aunt's house, and, not finding his wife there, went in search of her, and found her in a buggy with deceased returning from church to her aunt's. A difficulty then ensued between appellant and deceased; several shots being fired by each. The only eyewitnesses were appellant, his wife, and deceased. The wife did not testify. Deceased was shot in the neck, from which he bled to death in about an hour and a half or two hours thereafter.

A few minutes after he was shot a man met him "driving along," and, at his request, went with him in his buggy in search of a doctor. Before finding a doctor they met deceased's mother, who then went with them in their search for a doctor. When his mother asked him "how he let that nigger shoot him," he answered: "I could not help myself. He just run up and hailed me, and I turned around, and he shot me the first fire right through." This statement was introduced, over appellant's objection, as a dying declaration, to show that appellant was the aggressor in the difficulty. Appellant admitted the killing, but claimed to have acted in self-defense. The evidence introduced by the state, in order to qualify this statement as a dying declaration, was that deceased, when he first met the man who went with him in search of a doctor, said to him: "Come carry me back to the doctor, I am shot to death." And, while they were looking for the doctor, said: "I am going to die. Make haste and get the doctor. I am bleeding to death. I am going to die. Don't bother me and get the doctor." And again: "Make haste, mamma, and get the doctor, I am going to die." A doctor was finally found, but he did not succeed in stopping the flow of blood. In order that a dying declaration may be admissible as evidence, it must appear, beyond a reasonable doubt, to have been made under the realization and solemn sense of impending death. The de-

ceased, at the time of making the declaration, must have had no hope, however slight, of recovery. *Bell* v. *State,* 72 Miss. 507, 17 So. 232. Such does not appear to have been the situation of deceased here, when this declaration was made. All that this evidence can be said to prove is that deceased realized that he was bleeding to such an extent that he would die if the flow of blood was not quickly stopped. If this could have been done, he probably would have recovered. It was for this purpose that he was urging his mother and friend to make haste and find a doctor, and there is nothing in this evidence from which it can be said that he did not think that a doctor would be found in time to stop, and who, when found, would in fact succeed in stopping the flow of blood. It cannot be said, therefore, that he had abandoned all hope of recovery. The declaration, therefore, ought not to have been admitted in evidence.

In his closing argument the district attorney, over the objection of defendant, called the attention of the jury to the fact that appellant's wife had not testified reminded them of the fact that the state could not introduce her as a witness, but that appellant could, and suggested to them, that his failure to do so could be accounted for only on the ground that her evidence would show that he was guilty of murder. This argument was highly improper, was prejudicial to appellant, and should not have been made. *Johnson* v. *State,* 63 Miss. 313; *Cole* v. *State,* 75 Miss. 142, 21 South. 706; *Johnson* v. *State,* 94 Miss. 91, 47 South. 897. The reason why argument of this character is improper is fully set forth in *Johnson* v. *State,* 63 Miss., at page 316.

For the reason that the court erred in admitting in evidence the alleged dying declaration, and because of the improper argument of the district attorney, the judgment of the court below is reversed, and the cause remanded.    *Reversed and remanded.*